IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ALBERT DE LA GARZA,                        §
                                           §
        Petitioner,                        §
                                           §
v.                                         §          2:09-CV-0270
                                           §
RICK THALER, Director,                     §
Texas Department of Criminal Justice,      §
Correctional Institutions Division,        §
                                           §
        Respondent.                        §

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

        Petitioner has filed an application for a federal writ of habeas corpus challenging numerous

aspects of his parole and parole revocation procedures including the conditions of his parole, the

revocation of his parole, and the subsequent denial of his release back to parole.  For the reasons

hereinafter stated, the United States Magistrate Judge is of the opinion federal habeas corpus relief

should be DENIED.

I.
PROCEDURAL HISTORY

        On June 14, 1993, petitioner was convicted of the felony offense of aggravated robbery in

the 179th Judicial District Court of Harris County, Texas, and was sentenced to a 30-year term of

imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division.[1]

---

[1]Petitioner's punishment was enhanced by two (2) prior felony convictions.

*State v. De la Garza*, No. 655532.  Petitioner does not challenge the aggravated robbery conviction or sentence.

According to petitioner, he was considered for early conditional release to parole in June 2006 and, during parole review proceedings, was represented by retained counsel.[2]  Petitioner alleges that after these review proceedings, the Texas Board of Pardons and Paroles (the Board) determined petitioner should be allowed to participate in the InnerChange Freedom Initiative (IFI) Release Program administered by the Rehabilitation Programs Division of TDCJ at the Carol Vance Unit, an elective faith-based release program.[3]  Petitioner maintains his target release date, after completion of the required program, was scheduled for July 2008.  Petitioner alleges, without providing any documentation, that the Board agreed the only special condition of release to be imposed upon petitioner's release to parole was his participation in a substance abuse treatment program.[4]

On June 16, 2008, the Board did, in fact, grant petitioner early release to parole, issuing petitioner a Certificate of Parole.  The certificate, however, clearly indicated petitioner would be subject to not only a special condition of participation in a substance abuse treatment program, but would also be subject to a special condition requiring petitioner to comply with the Super Intensive

---

[2]Petitioner's eligibility for parole required service of one-fourth of his sentence, without consideration of good conduct time. Tx. Crim. Proc. Ann. art. 42.18 § 8(b)(3) (1993).  Petitioner has a sentence begin date of January 18, 1993.

[3]The InnerChange Program consists of a 30-day orientation (at a minimum), 18 months of programming and at least six months of aftercare upon release.  Offenders selected for participation are from Harris, Dallas, Bexar and surrounding counties.

[4]Tex. Gov't Code § 508.0441(a)(2) provides that "Board members and parole commissioners shall determine: . . . conditions of parole or mandatory supervision, including special conditions . . . ."

Supervision Program (SISP) conditions.[5]  On July 7, 2008, the conditions of release were explained

to petitioner and petitioner signed an agreement to abide by the conditions of his parole.  By signing

the agreement, petitioner accepted all conditions of parole, including all special conditions.

On August 15, 2008, a pre-revocation warrant issued for petitioner's arrest for violations of

the conditions of his parole.  This warrant was executed on September 20, 2008 and petitioner was

placed in the Harris County Jail.

On September 23, 2008, petitioner's parole officer, Mr. Jimmie Subblefield, spoke with

petitioner at the Harris County Jail.  As a result of this meeting, petitioner acknowledged his rights

in the revocation process, acknowledged being notified of the alleged violations of the conditions of

his release, to wit: (1) failure to report to his parole officer, (2) failure to reside at specified

residence, and (3) failure to abide by the special condition of SISP (by unplugging the base unit

from the phone line and cutting this monitoring bracelet), and admitted to all three alleged

violations.  Petitioner signed a written form waiving his right to a revocation hearing stating:

> I do not want a **REVOCATION** hearing.  I understand that the parole officer has no
> authority to make promises as to what will happen if I do not have a hearing.  I also
> understand that the Parole Board will, in all probability revoke.  I have not been
> coerced into signing this waiver.  By signing this waiver, I admit to one or more of
> the violations . . . .

On September 25, 2008, petitioner's waiver was processed, with an entry noting petitioner was

eligible for placement in an Intermediate Sanction Facility (ISF).

On October 14, 2008, petitioner's parole officer and a reviewer recommended petitioner's

---

[5]SISP is an administrative control program designed to provide the highest level of supervision provided by the TDCJ Parole
Division in order to best ensure public safety.  All SISP offenders shall be monitored on either active or passive Global
Positioning System (GPS) monitoring, and shall remain on SISP until designated members of the Board of Pardons and Paroles
assigned to the SISP Board Panel authorize removal from the program.  An offender who has a past or current conviction for
aggravated robbery will be referred to the SISP Board Panel for possible SISP placement prior to release on parole.  Texas
Department of Criminal Justice Parole Division, *Policy and Operating Procedure*, No. PD/POP-3.15.1.

parole be revoked.  On October 17, 2008, the Board revoked petitioner's parole without sending petitioner to ISF or a substance abuse felony punishment (SAFP) facility.  On December 1, 2008, petitioner was returned to TDCJ-CID.

On January 27, 2009, petitioner filed a Motion to Reopen Hearing requesting the revocation proceeding be reopened.  In response, the Board, on February 5, 2009, advised that since petitioner had waived his right to a revocation hearing, his Motion to Reopen did "not fall within the allowable situations wherein such a motion may be considered" and, consequently, would not be processed.

In 2009, petitioner was notified he would again be considered for early conditional release to parole.  In March 2009, petitioner requested each parole commissioner grant him a personal or individual interview.  On April 9, 2009, petitioner was reviewed for parole, but did not receive the individual interviews he had requested.  On April 16, 2009, petitioner was denied release to parole.[6]

On April 29, 2009, petitioner filed a request for Special Review seeking reconsideration of the denial of parole.  On May 19, 2009, the Board advised petitioner Board policy did not require board members to conduct a personal interview, that petitioner's waiver (of the revocation hearing) did not reveal any errors, and that he did not meet the criteria for Reinstatement, a Motion to Reopen Hearing or Special Review.[7]

On June 9, 2009, petitioner, acting pro se, filed a state application for a writ of habeas corpus alleging he was denied due process in connection with the revocation of his parole, and that the Board abused its discretion and violated petitioner's due process rights, in various pre- and post-

---

[6]Petitioner's next review hearing was scheduled for April 2011.

[7]On June 8, 2009, petitioner again requested Special Review.  On July 9, 2009, the Texas Board of Pardons and Paroles again advised petitioner that he did not meet the criteria for Reinstatement, a Motion to Reopen hearing or Special Review.

revocation matters, and in denying petitioner re-release to parole in April 2009.  *In re De la Garza*, No. 72,558-01.  The state trial court, finding petitioner's state habeas application raised issues that needed to be resolved, ordered the State to obtain affidavits addressing the circumstances surrounding the revocation of petitioner's parole and specifically responding to issues designated by the trial court.  In response, the State submitted an affidavit from petitioner's parole officer, as well as an affidavit from a records custodian of the Parole Division of TDCJ-CID.  On August 7, 2009, petitioner submitted his own affidavit contesting the statements of the parole officer and averring he did not receive written notice of the revocation as attested by the records custodian.[8]  A motion by petitioner for an additional affidavit from petitioner's parole officer addressing whether he gave petitioner verbal and/or written notice of his parole revocation does not appear to have been ruled on.  Ultimately, the state trial court, finding the affidavits submitted by respondent to be true and correct, determined petitioner had failed to demonstrate his confinement was improper and recommended habeas relief be denied.  On September 4, 2009, petitioner submitted a motion requesting leave to file his own affidavit executed September 1, 2009.  No action was taken on petitioner's motion.  On September 30, 2009, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing.

On October 23, 2009, petitioner filed the instant federal petition for a writ of habeas corpus with the United States District Court for the Southern District of Texas, Houston Division.  On October 30, 2009, the Houston Division transferred petitioner's habeas application to this Court for determination.  On November 15, 2010, respondent filed an answer to petitioner's habeas

---

[8]Petitioner submitted his affidavit with a motion for leave to file such affidavit.  No ruling appears in the record.

application and, on January 13, 2011, petitioner filed a reply to respondent's answer.  On March 31,

2011 and October 5, 2011, petitioner filed supplemental briefing clarifying his habeas application.

II.

PETITIONER'S CLAIMS

Petitioner claims his confinement is in violation of the United States Constitution because he

was denied due process as a result of the following:

1.  The Board improperly denied petitioner a preliminary hearing and a revocation hearing prior to revoking his parole;

2.  Petitioner's waiver of his revocation hearing was unknowing and involuntary because it was secured by coercion, threats and promises;

3.  All subsequent actions of the Board are illegal because they were based on an involuntary waiver;

4.  Petitioner was denied the right to present evidence in the form of subpoenaed emails at a hearing;

5.  Petitioner did not receive written notice that his parole had been revoked;

6.  The Board erred in revoking petitioner's parole rather than placing petitioner in an intermediate sanction facility (ISF);

7.  The Board erred in denying petitioner's Motion to Reopen the revocation process;

8.  The Board erred in denying petitioner an in-person interview prior to denying petitioner re-release to parole in 2009;

9.  The Board erred in not consulting with petitioner's attorney before adding additional special conditions of parole prior to petitioner's 2008 release;

10. The Board breached its parole agreement with petitioner by adding special conditions to his release; and

11. The Board erred in denying petitioner special review of the Board's April 2009 decision denying petitioner's re-release to parole.

III.

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless that person first shows the prior adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "Clearly established Federal law, as determined by the Supreme Court of the United States" includes only Supreme Court decisions as of the time of the relevant state-court adjudication on the merits.  *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Review is limited to the record that was before the state court that adjudicated the claim on the merits and evidence introduced in federal court has no bearing on review. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the Fifth Circuit recognizes this Texas state writ jurisprudence).

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Harrington v. Richter*, 131 S.Ct.770, 2011 WL 148587 (January 19, 2011). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden in a federal case still must be met by showing there was no reasonable basis for the state court to deny relief. *Id.* This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Petitioner DE LA GARZA filed a state habeas application challenging the constitutionality of his parole revocation, the subsequent denial of release back to parole, and conditions of his parole. The grounds alleged in his state habeas petition were the same grounds alleged in this petition. The Court of Criminal Appeals denied petitioner's state habeas application on September 30, 2009 without written order on findings of the trial court without a hearing. *Ex parte De la*

*Garza*, App. No. WR-67,730-01.  The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claims on the merits.  *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).  Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision denying relief was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## IV.
## FAILURE TO MEET BURDEN

The state trial court determined petitioner's habeas claims were without merit.  The Texas Court of Criminal Appeals denied petitioner's habeas application without written order based on the findings of the trial court without a hearing.  This constituted an adjudication on the merits and petitioner has not shown the state habeas decision was based on an unreasonable determination of the facts or that the decision was contrary to, or involved an unreasonable application of, clearly established federal law.  Instead, in his federal petition, petitioner has restated the claims he raised in his state habeas application and argued the adjudication of such claims was erroneous.  Petitioner has not shown the state courts reached a conclusion opposite to the Supreme Court on a question of law, nor has he shown how the state courts' conclusions of law were contrary to, or involved an unreasonable application of, Supreme Court law with respect to his claims.  Likewise, petitioner has not shown the state courts' findings of fact were unreasonable based on the record before the state courts.  Since petitioner has not met his burden, this Court is precluded from granting petitioner federal habeas corpus relief.  Consequently, the federal habeas corpus petition should be DENIED.

V.
PRE-PAROLE ISSUES (2006-2008)

According to petitioner, he was considered for early conditional release to parole in June 2006 and, during the parole review proceeding, was represented by retained counsel.  After this review, petitioner states the Board selected petitioner for participation in a voluntary faith-based IFI release program, and petitioner's target release date was scheduled for July 2008 after petitioner's completion of the required 18-month preliminary in-prison program.  According to petitioner, "the original 2006 'Notice of Parole Panel Decision'" included only substance abuse counseling as a special condition of release.  After completion of the program and prior to his release to parole, however, petitioner was presented with a Certificate of Parole which included two special conditions for release in addition to the substance abuse counseling:  SISP and GPS compliance.  Petitioner alleges these changes were made without the Board first consulting the attorney who represented petitioner during the parole review in May 2006, and in spite of petitioner reminding the parole officer he had been represented during the initial review.

In his ninth claim, petitioner argues the Board's failure to consult with petitioner's attorney before it included the SISP/GPS conditions of release violated his due process rights.  Essentially, petitioner's argument is that he was denied assistance of counsel when the Board "reopened" his parole case to add the two now special conditions for his release.  In his tenth claim, petitioner argues the Board breached its agreement with petitioner when it added the SISP/GPS condition.  Specifically, petitioner claims that when the Board added these conditions of release, it violated an "agreement" previously reached between petitioner and the Board outlining the conditions of his release.  Petitioner concludes the Board's error and breach resulted in the denial of his due process rights and, thus, the subsequent revocation of his parole for violations of these conditions was

unconstitutional.

Citing various Texas statutory provisions which allow legal representation of inmates before the Parole Board, petitioner concludes the Board committed error in not consulting with the attorney who represented him at the parole review proceeding before including SISP/GPS conditions of release on petitioner's Certificate of Parole.  Petitioner argues that when an inmate is represented by legal counsel at a parole review proceeding, the Board cannot subsequently add conditions of release without first consulting with that attorney, and that to do so is a denial of counsel and/or due process.  Other than referencing the constitutional concepts of due process and denial of counsel, and citing the various state statutory provisions allowing for legal representation, petitioner has failed to cite any specific legal basis for his argument that the Board was required "to consult" with his attorney.

Petitioner also argues the Board's inclusion of the SISP/GPS conditions of release on his Certificate of Parole violated an "agreement" petitioner had with the Board limiting special conditions of release to only substance abuse counseling.  Petitioner also contends his right to due process was violated when the Board added this condition of release without written notice. Petitioner contends the SISP/GPS conditions were inconsistent with the IFI program and that he would never have agreed to participate in the IFI program if he had known he would be under a SISP/GPS condition.

Petitioner has failed to show any violation of his federal constitutional rights.  While state law may allow counsel to submit or present information or arguments for and on behalf of an inmate on matters before the Board, merely allowing for representation does not create a *right* to counsel during the review proceedings.  *Cf. Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (Texas

inmates have no liberty interest in obtaining parole and, thus, cannot complain of the constitutionality of procedural devices attendant to parole decisions).  Just as petitioner has failed to demonstrate a federal or state right to counsel during parole review, he has failed to demonstrate any right to counsel when the Board sets a parolee's conditions of release.  Consequently, even though the Board allowed petitioner's counsel to appear and present an argument for early release during the parole review in 2006, petitioner was not unconstitutionally deprived of any right to counsel when the Board determined what final conditions of release would be imposed.  The Board was under no obligation to contact petitioner's counsel over a year later when setting petitioner's conditions of release, and the failure to do so was not a deprivation of petitioner's federal constitutional right to due process.

Moreover, petitioner cannot show any prejudice by the Board's failure to consult with the attorney prior to adding the conditions.  Even if the Parole Board had consulted with or notified petitioner's counsel of the imposition of the special conditions of parole, the Board did not need either petitioner's permission or his attorney's permission to impose the special conditions above which petitioner complains.  Texas law vests the Board with the exclusive authority and discretion to decide on a candidate's eligibility and release to parole.  A parole panel may impose, as a condition of parole, any condition that a court may impose on a defendant placed on community supervision.  Tex. Gov't Code Ann. § 508.221 (2008).  This includes the condition that a releasee submit to electronic monitoring if the parole panel determines that without participation in an electronic monitoring program the inmate would not be released onto parole.  *Id*.  Board members and parole commissioners determine which inmates are to be released on parole, conditions of parole, including special conditions, and the modification and withdrawal of conditions of parole.

Tex. Gov't Code Ann. § 508.141 (2008).  The Board retained exclusive authority and discretion to impose additional conditions of release whether or not counsel was notified and/or consulted.  If there is no liberty interest in obtaining parole, petitioner cannot manufacture a liberty interest by retaining counsel.

Nor do Texas parole statutes create an expectation of release that triggers due process under the United States Constitution.[9]  Consequently, no right to due process nor any liberty interest was created simply by granting petitioner permission to participate in the IFI program or designating a projected parole date.  The Board was free to take any action it wished, whether such action was to add conditions or even to deny parole up until the date petitioner was actually released on parole.  The state court found the Board had exclusive authority in imposing special conditions and petitioner has not demonstrated such finding is unreasonable.  Nor has the Board's granting petitioner permission to participate in the IFI program demonstrated there was any agreement additional conditions of release <u>would</u> <u>not</u> be imposed.  No right to due process was violated when the Board included conditions of release on petitioner's Certificate of Parole.

Lastly, petitioner agreed, in writing, to the SISP/GPS conditions above which he complains.  He agreed to them <u>prior to his release</u>, by signing the Certificate of Parole before he was released July 7, 2008 with these conditions.  If any infirmity existed in including these conditions of parole, it would have been waived by petitioner's acceptance of the conditions of his release.  Petitioner's

---

[9]Procedural due process under the Fourteenth Amendment of the United States Constitution is implicated where an individual is deprived of life, liberty, or property, without due process of law.  U.S. CONST. amend. XIV, § 1, cl. 3.  The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated.  The first question "asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

claim that he was prejudiced, *i.e.*, that he would not have agreed to the IFI program if he knew he would ultimately also have an SISP/GPS condition of release, is without merit.

Without an enforceable liberty interest in release on parole, petitioner's objections to the imposition of special conditions of parole are without merit. Further, petitioner has not demonstrated any denial of a protected right to counsel, deprivation of any constitutionally protected right, or the denial of any liberty interest. Petitioner has not presented cognizable claims for federal habeas corpus relief. Petitioner's ninth and tenth grounds should be DENIED.

VI.
REVOCATION ISSUES

Petitioner's first through fourth grounds complain of errors in the parole revocation process which he contends led to a deprivation of his constitutionally protected due process rights. Some constitutional rights to procedural due process do attach to parole revocation hearings. *McBride v. Johnson*, 118 F.3d 432 (5th Cir. 1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Although formal trial-like procedure is not required, the due process clause of the Fourteenth Amendment provides informal procedural protection to parolees. Minimum constitutional requirements apply at two stages of the parole revocation process.

First, a parolee is entitled to a preliminary hearing to determine if there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of the parole conditions. If it is determined there is probable cause for belief that the parolee violated the terms of his parole, then the State must afford the parolee a final revocation hearing. The purpose of the final revocation hearing is to go beyond the determination of probable cause, and make a final evaluation of any contested relevant facts and consideration of whether such

facts warrant revocation.  Six essential protections are required by the due process clause:

1.  written notice of the claimed parole violations;

2.  disclosure to the parolee of the evidence against him;

3.  an opportunity to be heard in person and to present witnesses and documentary evidence;

4.  the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

5.  a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

6.  a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 437.

As with any other constitutional right, however, a parolee can waive his rights to such hearings as long as the waivers are knowingly and voluntarily given.  *See Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"); *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S.Ct. 1709 (1969).

<u>Waiver</u>

Petitioner contends he requested both a preliminary and a revocation hearing during his meeting with his parole officer at the Harris County Jail, but that he ultimately signed a waiver of his revocation hearing when the officer refused to attend any hearings.  By his second ground, petitioner contends this waiver was unknowing and involuntary because it was secured by the false and unauthorized promise of his parole officer to recommend ISF if petitioner waived his hearings.

Petitioner also contends the waiver was involuntary because it was coerced by his parole officer's threat to recommend revocation if petitioner proceeded with a revocation hearing.  Petitioner maintains Stubblefield did not warn him the Board would revoke if he waived his hearings, nor did Stubblefield advise petitioner of his rights in the revocation process.  Petitioner notes he has argued the involuntariness of his waiver at every step of the administrative process, and has attested to the involuntariness of his waiver in affidavits submitted during state and federal habeas.

The waiver signed by petitioner states, in part:

> I understand the parole officer has no authority to make promises as to what will happen if I do not have a hearing.  I also understand that the Parole Board will, in all probability revoke.  I have not been coerced into signing this waiver.

There is nothing in petitioner's signed statement to indicate coercion or involuntariness.  In fact, petitioner specifically denies any promises or coercion, and acknowledges he understood his parole would probably be revoked.

Additionally, during state habeas corpus proceedings, petitioner's parole officer, Jimmie Stubblefield, submitted an affidavit wherein he stated:

> No promises were made to [petitioner] in exchange for his waiver of the hearing . . . No threats or methods of coercion were used to persuade [petitioner] to waive his rights to a hearing. . .  It is [my] belief that [petitioner] waived his rights to a revocation proceeding voluntarily and freely. [Petitioner] signed the waiver and stated that he knew he was wrong for violating his parole. ]I] read "The Rights to the Revocation Process" to [petitioner] and asked him if he understood his rights. [Petitioner] responded that he understood and then waived the revocation hearing.

In response, petitioner submitted an affidavit attesting to the promises and threats by the parole officer and the involuntariness of his waiver.  The state habeas trial court, however, found Stubblefield's affidavit credible, concluded Stubblefield did not obtain petitioner's waiver through promises, threats or coercion, and that petitioner's waiver was freely and voluntarily made, and

recommended to the Texas Court of Criminal Appeals that petitioner's state habeas application be denied.  Petitioner submitted an additional affidavit to the Texas Court of Criminal Appeals, again attesting to the promises and threats by the parole officer and the involuntariness of his waiver.  The Texas Court of Criminal Appeals denied petitioner's state habeas application based on the findings of the trial court.  These findings and this determination by the state habeas court that Stubblefield was credible does not constitute an unreasonable determination of the facts.

Petitioner argues in his federal habeas application that Stubblefield's affidavit is false, and submits another affidavit as evidentiary support.  Petitioner's assertions, however, are conclusory and self-serving, without independent evidentiary support, and are refuted by the state record, namely the regularity of petitioner's waiver, Stubblefield's express denial, in his affidavit, of petitioner's allegations of promises, threats and coercion, and Stubblefield's claim that he believed the waiver was voluntary.  Absent evidence in the record, petitioner cannot prevail on this ground. The state courts found Stubblefield's affidavit credible (necessarily concluding petitioner's affidavits were not credible), and concluded no promises, threats or coercion resulted in the waiver. This Court does not re-weigh the evidence and must defer to the state habeas courts.  Petitioner's second ground is without merit and should be DENIED.

By his third ground, petitioner contends all subsequent actions based on the involuntary waiver are subject to attack and are invalid.  Since petitioner cannot demonstrate, and this Court cannot find, the waiver to be involuntary, petitioner's argument under ground three is foreclosed and should be DENIED.

<u>Preliminary Hearing, Revocation Hearing
and Right to Present Email Evidence</u>

In his application, petitioner maintains that when he met with parole officer Stubblefield at the Harris County Jail, he not only requested, but insisted, on both a preliminary hearing and a revocation hearing.  Petitioner maintains this initial request for both hearings was an implicit denial of the alleged violations of his conditions of parole.  Petitioner maintains that only after Stubblefield refused to attend the requested hearings did petitioner then sign the waiver and concede he committed the alleged violations.  Petitioner notes, however, that he waived only a *revocation* hearing and did <u>not</u> sign the waiver for a *preliminary* hearing.  Petitioner argues the waiver of the revocation hearing was not supported by a waiver of the preliminary hearing and, thus, was not valid.  By his first ground, petitioner contends the Board erred in denying him both a preliminary and a revocation hearing prior to revoking his parole.

By his fourth ground, petitioner contends he was denied the right to present evidence at a hearing in the form of subpoenaed emails between the Board Commissioner, the Criminal Justice Committee, the IFI director, and the PRM president.  Petitioner maintains such emails would have shown mitigating facts regarding his alleged violations of failing to report to his parole officer and reside at his designated residence, and the actions of unplugging the base unit of his GPS system from his phone line and cutting off his monitoring bracelet.  Petitioner contends his parole officer, Stubblefield, denied petitioner's request to assist him in subpoenaing the emails on the day of their meeting at the Harris County jail, prior to petitioner signing the hearing waiver.

In the context of parole revocation, the Due Process Clause requires a preliminary hearing be held "to determine whether there is probable cause or reasonable ground to believe the arrested parolee has committed acts that would constitute a violation of parole conditions."  *Morrissey v.*

*Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Palmer v. Johnson*, 129 F.3d

609, at *3 (5th Cir. 1997).  The Texas Legislature enacted section 508.2811 of the Government Code

to implement the due process rights of those who are arrested as parole violators.  *Ex parte Davis*,

2007 WL 987085 at *1 (Tex.Crim.App. 2007); *Ex parte Harden*, 2007 WL 171599 at *1

(Tex.Crim.App. 2007).  Section 508.2811 provides that a parole panel shall provide a preliminary

hearing, within a reasonable time, to a releasee accused of a violation of the releasee's parole, to

determine whether probable cause or reasonable grounds exist to believe the releasee committed an

act that would constitute a violation of a condition of release underline the releasee "has been charged

only with an administrative violation of a condition of release."  Tex. Gov't Code § 508.2811

(2008); *see also* Tex. Gov't Code § 508.281(a) (2008) (emphasis added).  In an affidavit submitted

during petitioner's state habeas proceeding, Christina Propes, the Assistant Director of the Review

and Release Processing Section of TDCJ-Parole Division, stated:

> [Petitioner] was not afforded a preliminary hearing due tot he technical nature of the
> allegations coupled with the fact that a parole panel voted to revoke [petitioner's]
> supervised release within 41 days of confirmation of [petitioner's] arrest warrant as
> required by law.

Petitioner was charged only with administrative or "technical" violations of his conditions of

release without any allegation of a new criminal offense.  Consequently, under the circumstances of

this case, petitioner was not entitled to a preliminary hearing.  The Board did not err in denying

petitioner a preliminary hearing prior to revoking his parole and petitioner has not shown any

constitutional deprivation of a right to such hearing.

Secondly, this Court has found petitioner voluntarily and knowingly admitted to all three

alleged violations of the conditions of his parole (*see Waiver*, *supra*).  Petitioner's admission to the

alleged violations eliminated any need for a preliminary hearing because such admission, in and of

itself, established probable cause or reasonable ground to believe petitioner violated his parole conditions.  Similarly, petitioner's admissions to the alleged violations also waived any right to subpoena and present evidence at a preliminary hearing.

Lastly, the sole determination to be made by a hearing officer upon concluding a preliminary hearing is whether there is probable cause to hold the alleged parole violator in custody pending a final revocation hearing.  *Morrissey.* 408 U.S. at 487; *Brown-El v. Hall*, 8 F.3d 20 at *3 (5th Cir. 1993).  This Court found petitioner expressly waived a final revocation hearing, and that such waiver was voluntarily and knowingly made.  Petitioner's waiver obviated the scheduling of any revocation hearing which, in turn, rendered a determination as to whether there was probable cause that petitioner should be held for a hearing moot.  Since petitioner waived a final revocation hearing, any need for a preliminary hearing was eliminated.  Petitioner has not presented any authority that a waiver of a preliminary hearing is a necessary precursor to support a waiver of a revocation hearing.

Under the circumstances of this case, petitioner was not entitled to a preliminary hearing and, even if he was, due process procedural protections afforded by a preliminary hearing were nullified as the need for any preliminary examination was rendered moot by petitioner's admission of the violations and his waiver of a revocation hearing.  Moreover, petitioner cannot show any prejudice by the denial of a preliminary hearing.  Petitioner's first and fourth grounds should be DENIED.

VII.
POST-REVOCATION ISSUES

Notice of Revocation

Petitioner contends that on September 23, 2008, during his meeting with parole officer

Stubblefield in the Harris County Jail, Stubblefield advised petitioner he would come to the jail with the Board's decision on revocation.  Petitioner contends Stubblefield never personally delivered the Board's October 17, 2008 decision to revoke parole to petitioner at the jail as promised or respond to any of petitioner's correspondence in October and November 2008 inquiring as to the Board's decision.  Petitioner was returned to TDCJ on December 1, 2008. Petitioner contends he did not learn of the Board's October 17, 2008 decision to revoke until May 19, 2009, when he was denied special review of the decision to deny parole.  By his fifth ground, petitioner contends he was denied due process because the Board failed to provide him written notification of the revocation of his parole.

During the state habeas corpus proceedings, respondent provided an affidavit from a records custodian of the Parole Division of TDCJ-CID, Christina Propes.  In her affidavit, Propes attested petitioner "was provided both oral and written notice of the revocation by Jimmie Stubblefield, District Parole Officer on or about 10/20/2008."  Petitioner maintains this affidavit is invalid because it was made by a third party averring to facts of which she had no first hand knowledge, and because the affidavit was not supported by documentary evidence showing notice was given.[10] Petitioner submitted an affidavit to the state trial court as well as to the Texas Court of Criminal Appeals during the state habeas proceedings attesting he did not receive written notice of the decision to revoke, and requested the state courts order documentary evidence of the October 20, 2008 notice.[11]  The state trial court found Prope's affidavit was credible and that petitioner was

---

[10]Although Stubblefield also submitted an affidavit, he did not address giving notice of the revocation to petitioner.

[11]Upon Order of the Court, respondent provided a copy of an "Affidavit of Jimmie Stubblefield" dated July 2, 2009.  In this affidavit, Stubblefield averred he "went to the Harris County Jail on/about 10-20-08 to deliver the faxed copy of the Board Decision as well as notify offender of the Board's decision to revoke his parole.  Offender was provided both a written copy as well as a Verbal statement."  For reasons unknown to respondent or the Court, this affidavit was not submitted to the state courts during state habeas proceedings.  This Court has not considered this affidavit since federal habeas review of state court

provided both oral and written notice of his parole revocation on or about October 20, 2008.  The Texas Court of Criminal Appeals denied state habeas relief on the findings of the trial court.

In his waiver, petitioner noted his understanding that the Board, in all probability, would revoke his parole.  At the latest, petitioner should have been aware of the revocation of his parole upon his return to TDCJ on December 1, 2008.  Petitioner cannot demonstrate he was prejudiced by any lack of formal written notice of revocation by showing he was denied any remedies or protected rights by the lack of notice.  Even if the Board failed to provide notice of the revocation, such failure did not affect the outcome, fairness or integrity of the proceeding.  By May 2009, petitioner admits he was aware his parole had been revoked.  Assuming petitioner never received formal notice of revocation, this Court finds petitioner suffered no harm as a result of any lack of formal written notification of revocation.  Of course such assumption is contrary to the state court findings.  Petitioner's fifth ground should be DENIED.[12]

<u>Placement in an ISF</u>

Petitioner's Adjustment Statement and Waiver Processing Sheet utilized in the revocation process indicated petitioner met intermediate sanction facility (ISF) criteria.  However, after the revocation of petitioner's parole on October 17, 2008, petitioner was taken into TDCJ custody on or about December 1, 2008 and placed in a transfer unit.

In his sixth ground, petitioner complains of the Board's failure to place him in an ISF, rather than returning him to prison, either upon the revocation of his parole or in lieu of revocation.

---

proceedings is limited to the record before the state courts.  *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

[12]A parolee is entitled to a written statement as to the evidence relied on and reasons for revoking parole.

Petitioner contends the Board has a pattern of allowing "first time technical violators," such as petitioner, to be sent to ISF multiple times before revoking parole and returning the violators to prison. Petitioner fails to provide any controlling authority that he was entitled to ISF, but contends the Board should have placed him in an ISF and that failure to do so was an abuse of discretion resulting in a denial of due process.

Petitioner had no constitutional right to placement in an ISF as opposed to prison upon revocation of his parole. Nor did petitioner have a constitutional right to placement in an ISF in lieu of having his parole release revoked. Petitioner's disagreement with the Board's decision does not amount to a denial of due process. Petitioner has not presented a cognizable claim for federal habeas corpus relief. Petitioner's sixth ground should be DENIED.

## Motion to Reopen Revocation Proceeding

Petitioner's parole was revoked on October 17, 2008. On January 27, 2009, petitioner filed a motion to reopen the revocation proceeding under Title 37 of the Texas Administrative Code, section 146.11, seeking to assert his waiver of the hearings was involuntary. On February 5, 2009, the Board advised that since petitioner waived his right to a revocation hearing, his motion to reopen did "not fall within the allowable situations wherein such a motion may be considered" and, consequently, would not be processed.

In his seventh ground, petitioner argues the Board improperly refused to process his motion to reopen the revocation process. Petitioner contends he was entitled to have his case reopened because his allegations of an involuntary waiver satisfied the "substantial error" criteria for a motion to reopen. Petitioner argues he had a right to have his motion to reopen considered and/or processed, that section 146.11 of the state administrative code was violated by the Board's refusal

to process his motion and, consequently, petitioner was denied due process.  Petitioner does not cite any controlling authority supporting his due process argument.

Again, petitioner at most, alleges a possible violation of state law, but cannot demonstrate a violation of clearly established federal law.  There is no federal constitutional right to have a parole revocation proceeding reopened.  The Board's determination that a motion to reopen is not proper when a parolee has waived his right to a revocation hearing is simply a matter of interpretation of state law and not of constitutional dimension.[13]  Even if there were some liberty interest or due process right to reopen the revocation proceeding, such would not entitle petitioner to immediate or speedier release and such a claim is not cognizable in a habeas action.  *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't,* 37 F.3d 166, 168 (5th Cir. 1994) (appropriate habeas corpus relief is immediate release or a speedier release from imprisonment).  Petitioner's seventh ground should be DENIED.


IX.
PAROLE REVIEW ISSUES (2009-2011)

Denial of Parole Review Interview

Petitioner maintains that on February 18, 2009, he again became eligible for parole. Petitioner notes that in March 2009, he specifically requested a personal interview with each Board member in order to present mitigating facts about his previous parole violations and to argue his waiver of a revocation hearing was involuntary.  In his eighth ground, petitioner contends the Board improperly denied him an "in person interview" prior to denying his re-release to parole resulting in

---

[13]While the Court has some difficulty with the logic that since you waived your hearing you are not entitled to show your waiver was not voluntary, petitioner was able to eventually present his argument in state habeas.

what petitioner concludes was the denial of a meaningful opportunity to be heard before being denied re-release to parole.

Petitioner has not presented a cognizable claim for federal habeas corpus relief. As there is no right or constitutional expectancy of early release on parole in Texas and, thus, no liberty interest in parole, petitioner cannot complain of procedural devices attendant to parole decisions. *See Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995). Petitioner has not been deprived of any constitutionally protected right by the denial of a personal, in-person interview prior to the Board's parole decision. Petitioner's eighth ground should be DENIED.

## Denial of Special Review

On April 9, 2009, petitioner was denied re-release to parole. On April 29, 2009, petitioner requested a Special Review of his case by the Board to assert his allegations of an involuntary waiver. Title 37 of the Texas Administrative Code, section 145.l17, provides a "forum for receipt and consideration of information not previously available to the parole panel where the decision of the panel was to deny release to parole. . . ." On May 17, 2009, the Board advised petitioner his waiver did not reveal any error and that he did not meet the criteria for special review. In his eleventh ground, petitioner contends the Board improperly refused special review of the regional parole panel's April 2009 decision denying petitioner's re-release to parole and the parole consideration process. Petitioner contends his waiver of the revocation hearing should not exclude all parole process remedies, including Special Review.

The Court initially notes the Board did not indicate petitioner did not meet the criteria for Special Review because of his waiver of a revocation hearing during the revocation process. Rather, the criteria for Special Review appears to be specifically for "information not previously

available to the parole panel."[14]  Even so, for purposes of this federal habeas proceeding, petitioner

cannot demonstrate the deprivation of a constitutional right.  There is no federal constitutional right

to parole much less any right to have a parole decision reconsidered upon Special Review.  The

Board's interpretation of its rules is purely a matter of state law.  Petitioner's eleventh ground

should be DENIED.

X.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the petition for a writ of habeas corpus filed by petitioner ALBERT DE LA

GARZA be DENIED.

XI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 18th day of May, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[14]The rule even notes that it does not apply to a denial of parole decision "based upon erroneous information or an administrative file processing error."

CEA\HAB54\R&R\DELAGARZA-270.PRL:2

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).